UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GREGORY CURRAN,                          :
    Plaintiff,                        :               CIVIL CASE NO.
                                      :               3:19-CV-01353 (JCH)
v.                                       :
                                      :
MARIS RICHARDS                           :
    Defendant.                        :               FEBRUARY 2, 2022
                                      :

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 37)**

**I.     INTRODUCTION**

Plaintiff Gregory Curran brings this action alleging that, while he was incarcerated, defendant Correctional Counselor Maris Richards interfered with his right to access the courts by intercepting his mail and refusing to allow him to contact his attorney.  See Compl. at ¶ 6.  Richards has moved for summary judgment on Curran's claim.  See Def.'s Mot. for Summ. J. (Doc. No. 37); Def.'s Mem. of Law in Supp. of Her Mot. for Summ. J. ("Def.'s Mem.") (Doc. No. 37-2).  Plaintiff opposes this Motion.  See Brief in Opp'n to Mot. for Summ. J. ("Pl.'s Mem.") (Doc. No 38).

For the reasons discussed below, the Motion for Summary Judgment is granted.

**II.    FACTS**

In mid-2016, plaintiff Curran was sentenced to a term of imprisonment and sent to Willard Cybulski CI.  Def.'s Local R. 56(a)1 Statement at ¶¶ 1-3, 6, 8 ("Def.'s R. 56(a)1 Stmt") (Doc. No. 37-1); Pl.'s Local R. 56 Statement at ¶¶ 1-3, 6, 8 ("Pl.'s R. 56(a)2 Stmt") (Doc. No. 38-1).  At the time, defendant Richards was a Correctional Counselor there.  Def.'s R. 56(a)1 Stmt at ¶ 6; Pl.'s R. 56(a)2 Stmt at ¶ 6.  Part of her responsibilities included setting up legal phone calls for inmates at their request.  Id.

1

Although she generally had no involvement with inmate mail, she would be involved if

an inmate needed to mail an oversized envelope.  Def.'s R. 56(a)1 Stmt at ¶ 17.  In

those circumstances, "the inmate would purchase the envelope from commissary and

[she] would fill out a request form for postage so that [the] mailroom could weigh the

envelope and charge the inmate for the appropriate postage costs."[1]  Id.

After arriving at Willard Cybulski CI, Curran asked Richards to set up phone calls

for him on numerous occasions.  Def.'s R. 56(a)1 Stmt at ¶ 9; Pl.'s R. 56(a)2 Stmt at ¶

9.  Indeed, Curran did have seven different legal calls between November 2016 and

March 2017.  Def.'s R. 56(a)1 Stmt at ¶ 10; Pl.'s R. 56(a)2 Stmt at ¶ 10.  His first call

was on November 18, 2016, with an attorney named Jowdy.[2]  Def.'s R. 56(a)1 Stmt at ¶

11; Pl.'s R. 56(a)2 Stmt at ¶ 11.  During or just after that phone call, Attorney Jowdy's

secretary told Richards that Curran was not one of their clients and asked her to stop

arranging calls to their office because Attorney Jowdy would not speak with him.  Def.'s

R. 56(a)1 Stmt at ¶ 12; Pl.'s R. 56(a)2 Stmt at ¶ 12.  Curran also testified that Attorney

Jowdy's office refused to accept his calls.  Def.'s R. 56(a)1 Stmt at ¶ 13; Pl.'s R. 56(a)2

Stmt at ¶ 13.

In the meantime, Richards also provided Curran with a sentence modification

form, and he applied for two separate sentence modifications, both of which were dated

---

[1] Curran attempts to deny paragraph 17 of Richards' Rule 56(a)1 Statement by pointing to pages 44-47 of his deposition.  See Def.'s R. 56(a)2 Stmt at ¶ 17.  In those pages, however, Curran does not testify that Richards had a different role vis-à-vis inmate mail; rather, he states that on one occasion "[s]he intercepted" a letter he was trying to send to the court, made him send it "in a way that was incorrect", and in general interfered with "communications from the court." Def.'s Ex. 2, Dep. of Gregory Curran at 44-45 (Doc. No. 37-4).  The court discusses this testimony in greater detail below, see infra at 3-4.

[2] Although Attorney Jowdy's first name appears to be handwritten in Attachment A to defendant's Exhibit 3, it is not legible. See Def.'s Ex. 3, Attachment A, at 12 (Doc. No. 37-3). His first name does not appear elsewhere in the record before the court.

June 28, 2017, and were filed in the Connecticut Superior Court on July 20, 2017.

Def.'s R. 56(a)1 Stmt at ¶¶ 19, 21; Pl.'s R. 56(a)2 Stmt at ¶¶ 19, 21.  Curran's testimony

corroborated that, "on two occasions", he filed motions to modify his sentence.  Def.'s R.

56(a)1 Stmt at ¶ 23; Pl.'s R. 56(a)2 Stmt at ¶ 23.  The Connecticut Superior Court

denied both of his applications on September 7, 2017.  Def.'s R. 56(a)1 Stmt at ¶ 22;

Pl.'s R. 56(a)2 Stmt at ¶ 22.

In his deposition, Curran testified that Richards interfered with his ability to

access the courts in several ways.[3]  First, "[s]he intercepted" a letter he was trying to

send to the court and made him send the letter "in a way that was incorrect."  Dep. of

Gregory Curran at 44-45.  To Curran's knowledge, this "only happened [ ] one time",

and the letter in question was one of his motions for a sentence modification that was

eventually submitted to the court and dated June of 2017.  Id. at 71, 73.  He also avers

that she "intercepted communications from the court" and, on three to five occasions,

refused to allow him to contact Attorney Jowdy.  Id. at 44, 49.  However, Curran points

to no specific evidence about what, exactly, Richards intercepted from the court, how

many times this occurred, or any other evidence regarding the incident beyond his

single statement.[4]  See generally Pl.'s Statement of Material Facts (Doc. No. 38-1).

Curran also "concedes that there is no evidence that the Superior Court would have

---

[3] Richards disputes Curran's testimony that she interfered with his communications with the court or counsel in any way.  See, e.g., Def.'s R. 56(a)1 Stmt at ¶¶ 15, 20.  The court, however, must construe the evidence in the light most favorable to Curran, the non-moving party, at this stage.

[4] Curran also testified that Richards interfered with his potential community release by "[lying] to [his] wife, ma[king] [his] sponsor spooked [to] say no, [and] still continu[ing] to tell [him he] had won the right for community release."  Dep. of Gregory Curran at 70.  The court, however, has already dismissed the Fourteenth Amendment Substantive and Procedural Due Process claims related to this allegation. See Ruling on Motion to Dismiss at 10-11 (Doc. No. 22).

granted his applications for sentence modification" had Richards not interfered with his ability to file them "earlier than July of 2017." Def.'s R. 56(a)1 Stmt at ¶ 25; Pl.'s R. 56(a)2 Stmt at ¶ 25. He also admits that he "has no evidence" that "Richards had [any] impact on the court's decision to deny [his] application for a sentence modification. Def.'s R. 56(a)1 Stmt at ¶ 26; Pl.'s R. 56(a)2 Stmt at ¶ 26.

## III.    STANDARD OF REVIEW

A Motion for Summary Judgment will be granted if the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A genuine issue of material fact exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. See, e.g., Biondo v. Kaledia Health, 935 F.3d 68, 73 (2d Cir. 2019) (citing Anderson, 477 U.S. at 248)).

## IV.    DISCUSSION

As the court noted in its previous Ruling on Richards' Motion to Dismiss, "[i]t is 'well-established' that the Constitution affords prisoners a right of access to the courts.'" See Ruling on Motion to Dismiss at 3 (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)) (Doc. No. 30).[5] In order to prevail on such a claim, a plaintiff must show "that

---

[5] As the court also noted in its previous Rulings, "there is some ambiguity regarding the precise Constitutional foundation for this right", as "courts have considered claims for access to the court or counsel under several constitutional provisions." Ruling on Motion to Dismiss at 3 n. 3 (Doc. No. 30) (citing Ruling on Motion to Dismiss at 11 n. 4 (Doc. No. 22)).

the defendant's conduct: (1) 'was deliberate and malicious,' and (2) 'resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.'" Terry v. City of New York, No. 20-CV-0993, 2020 WL 1140874, at *3 (S.D.N.Y. Mar. 6, 2020) (citing Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)).  Where a plaintiff cannot show that a defendant's "interference with his mail . . . caused him to miss court deadlines or in any way prejudiced his legal actions", the second prong is not met. Davis, 320 F.3d at 352.  Indeed, "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."  Id. (internal quotations and citations omitted).

Here, even assuming that Richards' conduct "was deliberate and malicious" – which is an issue the court does not reach here – she is still entitled to summary judgment because there is no evidence in the record upon which a reasonable juror could conclude that Curran's legal actions were prejudiced in any way.  Curran testified that "one time . . . "[Richards] intercepted" a letter application he was trying to send to the court and made him send it "in a way that was incorrect."  Dep. of Gregory Curran at 44-45, 71.  He also concedes that he was thereafter able to file the application he was trying to send with the court and, crucially, that "there is no evidence that the Superior Court would have granted his applications" absent the delay.  See id. at 71; Def.'s R. 56(a)1 Stmt at ¶ 25; Pl.'s R. 56(a)2 Stmt at ¶ 25.  He also concedes that he "has no evidence" that Richards' actions had any impact on the court's decision to deny his sentence modification applications.  Def.'s R. 56(a)1 Stmt at ¶ 26; Pl.'s R. 56(a)2 Stmt at ¶ 26.  Nor does Curran, in his counseled two-and-a-half-page Memorandum

opposing the Motion for Summary Judgment, directly address these issues.  See generally Pl.'s Mem.

Similarly, Curran's testimony that on "three to five" occasions Richards prevented him from calling Attorney Jowdy is not sufficient to allow a reasonable jury to conclude that his legal actions were prejudiced.  Dep. of Gregory Curran at 49.  This is for the simple reason that, as Curran concedes, Attorney Jowdy was refusing to take his phone calls during this period.  See id. at 57; Def.'s R. 56(a)1 Stmt at ¶ 13; Pl.'s R. 56(a)2 Stmt at ¶ 13.  Moreover, Curran also testified that Richards would still arrange for phone calls with Attorney Jowdy "in certain cases" and that "for a period of time" he was still able to send letters to Attorney Jowdy and receive them from his office.  Dep. of Gregory Curran at 49, 58.  He was also able to correspond with the court through the mail and, again, has conceded that he "has no evidence" that "Richards had [any] impact on the court's decision to deny [his] application for a sentence modification."  Id. at 58-59; Def.'s R. 56(a)1 Stmt at ¶ 26; Pl.'s R. 56(a)2 Stmt at ¶ 26.  When a defendant is denied the opportunity "to make legal telephone calls to an attorney" but "does not assert that he was unable to communicate via letter to his attorney or the court" or that "he suffered an actual injury as a result of the defendant['s] conduct in prohibiting him from making legal telephone calls . . . his access to courts claim fails."  Palmer v. Simple, No. 13-CV-226, 2013 WL 6178530, at *3 (D. Conn. Nov. 21, 2013).

Finally, Curran's vague testimony that Richards "intercepted communications from the court" also does not create a disputed material fact for two reasons.  Pl.'s Statement of Material Facts at ¶ 3 (citing Dep. of Gregory Curran at 44).  First, Curran provides no detail about the communications that were intercepted beyond simply

6

asserting it happened.  "As the Second Circuit has explained, such vague and unspecific statements . . . '[fail] to comply with [Federal Rule of Civil Procedure] 56(e).'" Burns v. Rovella, No. 19-CV-553, 2021 WL 4263372, at *16 (D. Conn. Sept. 20, 2021) (quoting Patterson v. County of Oneida, NY, 375 F.3d 206, 223 (2d Cir. 2004)).  "When no specific facts as required by Rule 56(e) [are] provided by the party opposing summary judgment, a court can properly conclude that the party's opposition to summary judgment [was not] properly supported."  Id. (internal quotations and citations omitted) (concluding that the plaintiff's Affidavit, in which he alleged that "he was 'told by [his] superiors that [he] would not be removed from [his] position", failed to meet the requirements of Rule 56(e) because it did not say who made the statement, "assert that it was a defendant in [the] case . . . [or claim that] the 'superiors'" who made the statement "had the authority to make such a promise").  Second, even if Curran's testimony met the requirements of Rule 56(e), he again does not introduce facts into the record upon which a reasonable jury could conclude that Richards' interception of any communications from the court prejudiced him in any way.

For these reasons, the court concludes that Curran has failed to bring forth "sufficient specific facts to establish that there is a genuine issue of material fact for trial."[6]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## V.      CONCLUSION

Defendant's Motion for Summary Judgment (Doc. No. 37) is therefore granted.

---

[6] Because the court concludes that granting defendants' Motion for Summary Judgment is warranted on these grounds, it does not reach her qualified immunity arguments.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of February 2022.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge